J-A26003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RUTHE MARLENE ROMANI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMENIC A. ROMANI | : | |
| | : | |
| Appellant | : | No. 262 WDA 2019 |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTINE ROMANI-RUBY, JESSICA | : | |
| ROMANI, AND TRACY ROMANI | : | |

Appeal from the Decree Entered January 16, 2019
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10849 CD 2011

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 3, 2020**

Domenic A. Romani ("Husband") appeals from the final divorce decree, which incorporated the terms, provisions, and conditions of a marital settlement agreement entered into with Ruthe Marlene Romani ("Wife"), and

rendered appealable prior determinations pertaining to equitable distribution.[1]

We affirm.

The trial court set forth the history of this case as follows:

[Wife] and [Husband] married on June 2, 1990 in Creekside, Pennsylvania. [Wife] filed a Complaint in Divorce on May 4, 2011. [Husband] then filed a Petition to Determine Rights Pursuant to an Agreement [("the 1989 Agreement and 1990 Addendum")], or in the Alternative, to Invalidate a Prenuptial Agreement filed on June 17, 2011. [Husband] then filed a Petition Raising Economic Claims on August 29, 2011. Most relevant to the present issue, [Husband] filed a Motion for Clarification … on September 30, 2011, setting forth [Husband's] position regarding the request to invalidate the 1989 Agreement and 1990 Addendum, signed by both parties.

The Honorable Judge Carol Hanna issued an Opinion and Order of Court on March 16, 2012 addressing the validity of the 1989 Agreement and 1990 Addendum. The 1989 Agreement was signed by [Wife] and [Husband] and dated July 28, 1989 and the 1990 Addendum was signed by [Wife] and [Husband] and dated June 1, 1990. Judge Hanna determined that there was a mutual mistake as to the inclusion of Paragraphs 7 and 12 of the 1989 Agreement and struck those two paragraphs. Paragraph 7 sets forth the parties' rights to respective estates and Paragraph 12 sets forth restrictions on alimony claims. Judge Hanna found that the rest of the 1989 Agreement and 1990 Addendum were valid and enforceable.

By a September 1, 2016 Order of Court, the parties agreed to have [a] Master hear arguments, receive briefs and make a report and recommendation regarding the issue of whether the 1989 Agreement and 1990 Addendum excludes the increase in value of premarital assets. By Order of Court dated October 18,

_____

[1] We note that the caption in this matter contains the names of Christine Romani-Ruby, Jessica Romani, and Tracy Romani (collectively "Interveners"), who are the step-grandchildren of Husband. Interveners filed a petition to intervene on July 21, 2015, and the trial court granted the petition and added their names to the caption by order entered August 20, 2015. Although their names remain in the caption, Interveners are not participants in this appeal.

> 2016, the parties further agreed to have [a] Master hear arguments, receive briefs and make a report and recommendation regarding the issue of whether the agreements exclude property that was acquired during the marriage in the parties' sole and separate names. Matthew G. Simon, Esquire served as the Divorce Master and filed his Report and Recommendation with the Court on March 8, 2017.

Trial Court Opinion, 9/21/17, at 1-2.

Husband filed exceptions to the Master's report. On September 21, 2017, the trial court issued an order accepting the Master's report and denying Husband's exceptions.[2]

Wife filed another request for appointment of a master to address the equitable distribution of a jointly owned piece of property. However, on January 3, 2019, the parties signed a waiver of notice of entry of a divorce decree, affidavits of consent, and a marital settlement agreement. The final divorce decree was entered on January 16, 2019.

---

[2] The decision of September 21, 2017, was authored by Senior Judge Joseph Nickleach.

Husband filed this timely appeal.[3]  Husband and the trial court[4] complied with Pa.R.A.P. 1925.

Husband presents the following issues for our review:

I. Where persons enter into a co–habitation agreement and those persons later marry one another, can the co-habitation agreement operate to exclude property acquired during the marriage from becoming "marital property" as defined under Chapter 35 of the Pennsylvania Divorce Code?  23 Pa.C.S.A § 3501(a).

II. Where persons enter into a co–habitation agreement and those persons later marry one another, can the co-habitation agreement operate to exclude the increase in value of nonmarital property during the marriage from becoming "marital property" as defined under Chapter 35 of the Pennsylvania Divorce Code?  23 Pa.C.S.A § 3501(a).

Husband's Brief at 8.  Husband argues that "the trial court erred in holding that a co-habitation agreement entered into by the parties prior to marriage

---

[3] Wife has filed an "application to quash appeal for reasons appearing of record," claiming that Husband's challenge to the September 21, 2017 order accepting the master's report is untimely and should be quashed.  However, no appeal could have been taken until entry of a final decree in divorce. **Fried v. Fried**, 501 A.2d 211 (Pa. 1985) (holding that challenges to equitable distribution are interlocutory and unappealable until entry of a final decree in divorce). **See also Sneeringer v. Sneeringer**, 876 A.2d 1036 (Pa. Super. 2005) (holding that orders upholding marital agreements are no longer appealable during the pendency of a divorce action).  Accordingly, we deny Wife's motion to quash.

We further note that Wife included in her motion to quash an argument that Husband "has waived any appealable issues that may have been raised by signing the Marital Settlement Agreement and Waiver of Consent." Application to Quash, 4/2/19, at 5, ¶15.  We will address the issue of waiver in the body of this Memorandum.

[4] Judge Thomas M. Bianco authored the decision in compliance with Pa.R.A.P. 1925(a).

could operate to waive the parties['] right to equitable distribution (a) of property acquired during the marriage and (b) of the increase in value during the marriage of nonmarital property." *Id*. at 17 (capitalization omitted).

Before we address Husband's issues on appeal, we must first consider whether he has waived his right to present those challenges. Wife notes that the marital settlement agreement dated January 3, 2019, which was filed with the waiver of notice and affidavit of consent, settled completely and finally all economic and other rights and obligations between the parties, therefore resulting in waiver of the claims on appeal. Wife's Brief at 29-34; Application to Quash, 4/2/19, at 5 ¶ 15. We are constrained to agree.

In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require. *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004).

> Our standard for reviewing awards of equitable distribution is well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Hayward v. Hayward*, 868 A.2d 554, 557-558 (Pa. Super. 2005) (citations omitted).

"It is well-established that the law of contracts governs marital settlement agreements." ***Vaccarello v. Vaccarello***, 757 A.2d 909, 914 (2000) (quoting ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004)); ***Stamerro v. Stamerro***, 889 A.2d 1251, 1259–1260 (Pa. Super. 2005). Our courts observe the following principles in reviewing a trial court's interpretation of a marital settlement agreement:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.
>
> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted).

We have also reiterated this Court's limited role in interpreting contracts such as property settlement agreements between spouses:

> A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.
>
> * * *
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect

- 6 -

to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

*Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002)). Further, where, as here, the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa. Super. 2004).

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004).

Our review of the certified record reflects that, on January 3, 2019, the parties entered into a marital settlement agreement. Record Entry 151. The text of the marital settlement agreement provides, in pertinent part, as follows:

<u>WITNESSETH</u>

* * *

WHEREAS, Husband and Wife are desirous of settling completely and finally the economic and other rights and obligations between each other; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and intending to be legally bound hereby, the parties agree as follows:

I. GENERAL PROVISIONS

* * *

H. <u>Mutual Releases</u>: Except as otherwise provided for in this Agreement:

1. Each party hereby releases and forever discharges the other and the estate of the other for all purposes

from and all rights and obligations which either has or at any time hereafter may have for past, present or future support or maintenance, alimony, alimony pendente lite, equitable distribution, counsel fees, costs, expenses, and any other right or obligation, economic or otherwise, whether arising out of the marital relationship or otherwise, including all rights and benefits under the Pennsylvania Divorce Code of 1980, its supplements and amendments, as well as under any other law of this or any other jurisdiction.

2. Each party hereby releases and forever discharges the other and his or her heirs, executors, administrators, assigns, property and estate from any and all rights, claims, demands or obligations arising out of or by virtue of the marital relationship of the parties or otherwise, whether now existing or hereafter arising. The above release shall be effective regardless of whether such claims arise out of any former or future acts, contracts, engagements or liabilities of the other or by way of dower, courtesy, widow's or widower's rights, family exemption or similar allowance, or under the intestate laws, or the right to take against the spouse's will, or the right to treat a lifetime conveyance by the other as testamentary, or all other rights of a surviving spouse to participate in a deceased spouse's estate, whether arising under the law of Pennsylvania, any state, Commonwealth or territory of the United States, or any other country.

Except for any cause of action for divorce which either party may have or claim to have, each party gives the other by the execution of this Agreement an absolute and unconditional release and discharge from all causes of action, claims, rights or demands whatsoever, in law or equity, which either party ever had or now has against the other. The parties agree to execute the necessary documents to finalize their divorce including but not limited to an Affidavit of Consent, Waiver of Notice and Verification of Social Security Number, simultaneously with this Agreement.

* * *

## II. EQUITABLE DISTRIBUTION

* * *

H. <u>Separate Assets</u>: Except as otherwise set forth in this Agreement, each party shall retain as his or her separate assets and all property that is to be titled in his or her name or now in his or her possession.  The party not having title to or possession of any particular asset hereby waives and releases any and all claim therein, and acknowledges that hereafter the party having title to or possession of a separate asset is the sole and exclusive owner thereof.  With respect to his or her separate assets, each party agrees to indemnify and hold the other harmless from any liability, cost or expense with respect to such separate assets.

* * *

## IV. MISCELLANEOUS PROVISIONS

A. <u>Waiver or Modification to be in writing</u>: No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and signed by both parties and not waiver of any breach or default of this Agreement shall not be deemed a waiver of any subsequent breach or default of the same or similar nature.

* * *

I. <u>Contract Interpretation</u>: For purposes of contract interpretation and resolving any ambiguity herein, the parties agree that this Agreement was prepared jointly.

* * *

K. <u>BINDING EFFECT OF AGREEMENT</u>: HUSBAND AND WIFE EACH REPRESENT THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND THAT THE CONTENTS HEREOF ARE KNOW[N] TO THEM, THAT THEY ARE ENTERING INTO THIS AGREEMENT OF THEIR OWN FREE WILL AND VOLUNTARILY, AND NOT AS A RESULT OF DURESS, INTIMIDATION OR OTHER ACTION BY THE OTHER PARTY.  THIS AGREEMENT AND ALL OF THE TERMS AND CONDITIONS HEREIN SHALL INURE TO THE BENEFIT OF AND SHALL BE BINDING UPON THE PARTIES HERETO, THEIR

> RESPECTIVE HEIRS, EXECUTORS, ADMINISTRATORS SUCCESSORS AND ASSIGNS.

Marital Settlement Agreement, 1/3/19, at 1, 2-3, 4, 6, 7 (capitalization in original).

The language of the marital settlement agreement set forth above is clear and unambiguous. Pursuant to the agreement, both parties have waived any appealable issues regarding equitable distribution. Specifically, under Section I, paragraph H, the parties have mutually released each other with regard to multiple claims, the most pertinent to this matter being the equitable distribution issues. *Id*. at 2-3. Moreover, at Section II, paragraph H, the agreement sets forth a specific provision governing the equitable distribution of separate assets, which are the subject of this case. *Id*. at 4. Hence, by signing the unambiguous marital settlement agreement on January 3, 2019, Husband waived his challenges set forth in this appeal. Accordingly, there are no issues appropriate for our review.

Wife's Application to Quash denied. Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/3/2020

- 10 -